## COMMONWEALTH vs. PHILIP J. DiMARZIO.

No. 99-P-1722.

Plymouth. June 11, 2001. - October 5, 2001.

Present: JACOBS, KANTROWITZ, & KAFKER, JJ.

Further appellate review granted, 435 Mass. 1105 (2001).

*Controlled Substances. Constitutional Law,* Search and seizure. *Search and Seizure,* Exigent circumstances, Inevitable discovery, Search incident to lawful arrest.

Exigent circumstances excused the warrantless entry of police into a criminal defendant's warehouse office, where, although the defendant had a reasonable expectation of privacy in his office and had not consented to the entry, the police were responding to a threat of violence by the intoxicated defendant through means of a shotgun, found the defendant's car parked at the warehouse in a manner that would give them reason to believe that the defendant was in a rush and that they would not have time to get a warrant before confronting any danger the defendant presented, and entered through an open door, peaceably, and in daylight. [748-751]

The seizure by police of marijuana from a criminal defendant's desk was not justifiable as a search incident to a lawful arrest or an inevitable discovery, where the evidence was discovered as the result of a statement unlawfully obtained from the defendant, who had been handcuffed but who had not been given his Miranda rights; where there was no possibility that the defendant could have reached into the desk drawer and destroyed the evidence, given the presence of three police officers, the handcuffs on the defendant, his position on the opposite side of the desk, and the absence of others in the room to help him; and where there was no evidence that the police were looking in the drawer for a weapon as opposed to the marijuana, or that they were still concerned about their safety. [751-754]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on May 17, 1999.

A pretrial motion to suppress evidence was heard by *James F.X. Dinneen,* J., and the case was heard by *Richard D. Savignano,* J.

*Dana Alan Curhan* for the defendant.

*Christina L. Crowley,* Assistant District Attorney, for the Commonwealth.

KAFKER, J. Immediately after receiving a report that the defendant, Philip J. DiMarzio, was intoxicated and had told the people with whom he had been arguing that he would return with a shotgun, three police officers went to the defendant's warehouse office. Upon entering, they smelled burning marijuana and saw rolling papers. Having placed the defendant in handcuffs, but without informing him of his Miranda rights, the police asked where the marijuana was. He told them it was in the drawer of his desk. The police seized a baggie of marijuana from the desk.

The defendant was charged with threatening to commit a crime, possession with intent to distribute a class D controlled substance, and disturbing the peace. His motion to suppress the marijuana evidence was denied. Following a bench trial, he was convicted on a single count of the lesser included offense of simple possession of marijuana.[1] The defendant challenges the denial of his motion to suppress the marijuana evidence, arguing that the police officers' warrantless entry into his office and their seizure of fifty-six grams of marijuana from his desk drawer after questioning him in violation of his Miranda rights cannot be justified under the doctrines of exigent circumstances, search incident to a lawful arrest, or inevitable discovery.

1. *Summary of facts.* We summarize the facts found by the judge in his ruling on the defendant's suppression motion and supplement those facts with uncontroverted testimony. See *Commonwealth* v. *Torres*, 433 Mass. 669, 670 (2001). Compare *Commonwealth* v. *Scott, ante* 486, 492 (2001). On a Sunday afternoon in May, the defendant drove to the house of a woman for whom he had been doing carpentry work. There he argued with the woman and her male friend and "made a scene." He returned to the house several times seeking admission. He appeared intoxicated, and the woman called the police, reporting that the defendant had left the premises but had threatened to return with a shotgun. Three police officers drove to the defendant's office which was located in a "warehouse type" building across the street from his residence. They saw the

---

[1] The Commonwealth voluntarily dismissed the charge of making a threat, and the judge entered a required finding on the count alleging disturbing the peace.

defendant's car parked at an odd angle with the driver's side door open and a door to the defendant's warehouse open as well. After shouting something through the open door of the warehouse, the officers stepped inside the building.[2]

Once inside, the officers became aware of the aroma of burning marijuana, which became stronger as they approached the defendant by ascending a flight of stairs that led to his loft office. In the office they observed the defendant seated at his desk, talking on the telephone; they requested that he terminate his conversation. The officers also saw a package of "used" rolling papers on top of a rubbish barrel behind the defendant's desk. At that point they asked the defendant to stand and step around from the back of the desk. He did so, and they handcuffed him. They then asked him where the marijuana was. He replied that it was in his desk drawer.[3] The officers opened his desk drawer and seized fifty-six grams of marijuana.

2. *Motion to suppress.* On review of the denial of the motion to suppress, the judge's "findings are 'binding in the absence of clear error . . . and [we] view with particular respect the conclusions of law which are based on them.' However, because the issue before us is one of constitutional dimensions, the judge's findings of fact and rulings of law are open for reexamination by this court." *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 384, cert. denied, 515 U.S. 1146 (1995) (citations omitted). See *Commonwealth* v. *Clermy*, 421 Mass. 325, 328 (1995).

a. *The entry into the warehouse.* The judge found that "the police were responding to credible information from civilians who appeared to have witnessed minor criminal conduct by a suspect who was intoxicated and had indicated that he would return with a gun to finish the argument." He concluded that "[i]t was reasonable for the police to go looking for the defendant to gather further information." Finding the defendant's

---

[2]Police Officer Mark Celia, the only witness to testify at the motion hearing, stated, and the motion judge found, that one of his fellow officers exchanged words with an occupant of the warehouse before they entered the building. The motion judge also found that "[t]he evidence does not support the conclusion that the defendant specifically invited the officers in."

[3]The judge ruled that the defendant's statement must be suppressed due to the officers' failure to give the defendant his Miranda warnings.

car as they did, and in view of the physical nature of the business location, the judge concluded that it was "not unreasonable for the officers to step inside," even though "[t]he evidence [did not] support the conclusion that the defendant specifically invited the officers [to enter]." We agree.

While the "Fourth Amendment protection from unreasonable searches and seizures extends to commercial spaces," *Commonwealth* v. *Cadoret*, 388 Mass. 148, 151 (1983), an individual's expectation of privacy in a commercial space is generally less than in a residential location. *Commonwealth* v. *Krisco Corp.*, 421 Mass. 37, 44 (1995). Nonetheless, if public access to a commercial area is limited or controlled, then an individual does have a protectable privacy interest in the space. See *Commonwealth* v. *Cadoret*, 388 Mass. at 152; *Commonwealth* v. *Krisco Corp.*, *supra* at 45; *Commonwealth* v. *Lee*, 32 Mass. App. Ct. 85, 87 (1992). The question to be considered is "whether society would accept that a person would have a reasonable expectation of privacy in the space searched." *Commonwealth* v. *Midi*, 46 Mass. App. Ct. 591, 593 (1999).

Turning to the case at bar, we conclude that the defendant did have a reasonable expectation of privacy in his warehouse office. We rely on the "physical nature" of the building, a tin shed warehouse type building without eye level windows or signs announcing a place of business or inviting visitors or customers. A photograph entered in evidence shows a long one-and-one-half story building with multiple pedestrian and garage doors, surrounded by machinery and piles of lumber, with several planks leaning against the building. On the first floor of the building, the defendant kept his tools and building supplies for his contracting business; in the office on the second floor he made drawings and wrote contracts. The building has none of the attributes of the type of business establishment that a member of the public would feel welcome to walk into unannounced. The fact that the door in the building in which the defendant's office was located was ajar does not change our conclusion. An individual's expectation of privacy out of public view inside a building does not disappear because

the door to the building is open.[4] Compare *Commonwealth* v. *Podgurski*, 386 Mass. 385, 388 (1982), cert. denied, 459 U.S. 1222 (1983). Finally, as we have noted, the judge found that the defendant did not "specifically invite[] the police in."

Because the defendant had an expectation of privacy in his warehouse office and had not consented to the entry, we next consider whether exigent circumstances excused the police officers' warrantless entry into the building. The Supreme Judicial Court has stated that " '[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal, absent an exigency or emergency.' . . . In justifying action under this doctrine, the Commonwealth has the burden of showing . . . that 'the authorities had a reasonable ground to believe that an emergency existed, and . . . [that] the actions . . . were reasonable under the circumstances.' " *Commonwealth* v. *Morrison*, 429 Mass. 511, 514-515 (1999) (citations omitted). See *Commonwealth* v. *Pietrass*, 392 Mass. 892, 898 (1984); *Commonwealth* v. *Hurd*, 29 Mass. App. Ct. 929, 930-931 (1990). "[W]hether an exigency existed, and whether the response of the police was reasonable and therefore lawful, are matters to be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis." *Commonwealth* v. *Young*, 382 Mass. 448, 456 (1981).

The police here were presented with the combustible combination of a gun,[5] intoxication, and conflict. Although the police were responding to a threat of violence, and not violence

---

[4]In regard to the open door, the judge found that the defendant "left the door open because this was his habit when he was expecting friends to come by and it was a form of open invitation for them to enter." The judge did not find that the door was always left open as the Commonwealth implies. We note further that the judge did not rely on testimony that the defendant provided to the effect that he never saw clients on the premises, nor do we rely on that testimony in reaching our conclusion.

[5]In *Commonwealth* v. *Forde*, 367 Mass. 798, 804 (1975), the court described "the warrantless entry into the defendant's apartment to arrest [a] defendant who had been brandishing a gun and threatening to kill everyone in the building . . . [as] a classic example of the type of emergency which always excuses the failure to obtain a warrant." See *Commonwealth* v. *Stoute*, 422 Mass. 782, 790 (1996) ("[w]hen a tip . . . concerns the possession of a firearm, it deserves the immediate attention of law enforcement officials").

itself, they immediately reacted to what they had been told.[6] When they arrived at the warehouse and found the defendant's car parked at an angle with the door open, they had reason to believe that the defendant was in a rush. It was also reasonable for the police to conclude that they would not have time to get a warrant before confronting any danger that the defendant presented. In these circumstances, where an angry, intoxicated defendant had just threatened to return with a shotgun, and the police had found his car parked with the door open, we conclude that the authorities had reasonable grounds to believe that an exigency existed and that action on their part was warranted.

We also conclude that the actions the police officers took were reasonable under the circumstances. They had strong reason to believe that the defendant was in the warehouse after seeing his car parked outside with its door open. See *Commonwealth* v. *Pietrass*, 392 Mass. at 898. The police entry was through an open door, peaceable, and conducted in daylight. See *id.* at 898-899. The entry was also to the defendant's business, not his home. Whether, in hindsight, the officers had other possible options for safely confronting the defendant is not the question. *Commonwealth* v. *Young*, 382 Mass. at 456. The record, therefore, supports the motion judge's conclusion that it was "not unreasonable [for the police to] step inside."

b. *The seizure of the marijuana from the desk.* The motion judge concluded that "[s]ince no one else was in the area, and since the smell of marijuana was strongest right near the defendant and his desk[,] and since rolling papers were seen close to the defendant, it seems reasonable that the police had

---

[6]Although threatening to commit a crime is a misdemeanor, and absent statutory authority not present here, a police officer may not arrest without a warrant unless the misdemeanor involves a breach of the peace committed in the presence or view of the officer, *Commonwealth* v. *Jacobsen*, 419 Mass. 269, 272 (1995), we do not consider the misdemeanor/felony distinction to be the focus of our inquiry when determining whether the "need to protect or preserve life or avoid serious injury" exception has been met. See *Commonwealth* v. *Morrison*, 429 Mass. at 514-515. See generally *Illinois* v. *McArthur*, 531 U.S. 326, 330-336 (2001), distinguishing *Welsh* v. *Wisconsin*, 466 U.S. 740, 754 (1984). The key issue is the likelihood of violence and harm. The fact that the violence has only been threatened, and had not occurred, does not preclude a finding of exigency justifying an otherwise illegal entry, although it is clearly an important consideration.

probable cause to believe that the defendant was then or in the very recent past, had been in possession of marijuana, and it was proper to arrest him for possession of marijuana." We agree.

We next consider the legality of the seizure of the marijuana from the desk drawer. Having handcuffed the defendant, but not having given him his Miranda warnings, the police asked him where the marijuana was, and he told them it was in the desk drawer. The judge found that the defendant did not consent to the search of the drawer and that the police searched the drawer and seized the marijuana as a direct result of the improper questioning. The judge correctly found that the questioning violated Miranda, but concluded that the doctrines of inevitable discovery and search incident to arrest authorized the search and seizure. We disagree.

Where, as here, evidence is discovered as the result of an unlawfully obtained statement, we consider whether it would have been otherwise inevitably discovered by lawful means. *Commonwealth* v. *Perrot*, 407 Mass. 539, 547 (1990). The Commonwealth has "the burden of proving the facts bearing on the inevitability by a preponderance of the evidence and . . . that discovery by lawful means was 'certain as a practical matter.' " *Ibid.* Without addressing inevitable discovery beyond referencing it in a footnote, the Commonwealth contends that the search incident to arrest doctrine authorizes the search and seizure. Even if we were to assume that the search of the drawer would have taken place absent the improper questioning, a factual issue that both the trial judge and Commonwealth gloss over, we conclude that the search of the drawer would not have been authorized pursuant to the search incident to arrest doctrine. As this is the only "lawful means" of seizure identified by the parties, the failure to satisfy the search incident to arrest requirement is fatal to the inevitable discovery argument as well.[7]

Under G. L. c. 276, § 1, the relevant paragraph of which is

[7]We note that the inevitable discovery rule does not authorize "admission of evidence seized in violation of the requirement that a search warrant be obtained, even if it was inevitable that, if sought, a search warrant would have been issued and the evidence would have been found." *Commonwealth* v. *O'Connor*, 406 Mass. 112, 118 (1989). *Commonwealth* v. *Perrot*, 407 Mass. at 547.

set out in the margin,[8] officers may, without a warrant, seize "evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment." Such seizures are allowed "to prevent an individual from destroying or concealing evidence of the crime for which the police have probable cause to arrest, or to prevent an individual from acquiring a weapon to resist arrest or facilitate escape." Smith, Criminal Practice and Procedure § 238, at 198 (Supp. 2000). "A search incident to arrest is limited to the area within the arrestee's immediate control . . . ." *Commonwealth* v. *Alvarado*, 420 Mass. 542, 554 (1995). In *Chimel* v. *California*, 395 U.S. 752, 763 (1969), the Court stated that there was no justification "for routinely searching any room other than that in which an arrest occurs — or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." See *Commonwealth* v. *Cohen*, 359 Mass. 140, 146 (1971) (cubes of LSD in defendant's refrigerator were not within defendant's immediate control even though defendant was seated at kitchen table); *Commonwealth* v. *Garcia*, 34 Mass. App. Ct. 386, 394 (1993) (after defendant's arrest, his mailbox was not under his immediate control and warrantless search of area was unjustified, whether or not defendant was standing close to mailbox).

Laying aside for the moment the officers' concerns about the shotgun, we conclude that there was virtually no possibility of the defendant reaching into the desk drawer and destroying the marijuana evidence given the presence of three officers, the handcuffs, his position on the opposite side of the desk, and the absence of others in the room to help him.[9] While the fact that a defendant "was handcuffed or restrained at the time of the

---

[8]"A search conducted incident to an arrest may be made only for the purposes of seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape. Property seized as a result of a search in violation of the provisions of the paragraph shall not be admissible in evidence in criminal proceedings." G. L. c. 276, § 1.

[9]We also note that the Commonwealth introduced no evidence of exigent circumstances related to the marijuana as opposed to the shotgun, and the trial judge found no exigency related to the marijuana. See *Commonwealth* v. *Bass*, 24 Mass. App. Ct. 972, 974 (1987), quoting from *Arizona* v. *Hicks*, 480 U.S.

search is not dispositive in determining whether a search was within the potential grab area," *Commonwealth* v. *Elizondo*, 428 Mass. 322, 324 n.3 (1998), restraints on a defendant greatly narrow the area in which he could be feared to reach.[10]

A search of the drawer for weapons would raise some different considerations. We are especially cognizant of the safety concerns of officers and others relating to searches for guns incident to arrest. See Grasso, Suppression Matters Under Massachusetts Law § 12-3(a), at 12-7 (2001) ("[t]he case law reflects a tendency to afford more leeway for a search for weapons, as opposed to a search for evidence of the crime"). The defendant at this point, however, was nonthreatening and cooperative. There was also no evidence introduced that the police were looking in the drawer for a weapon as opposed to the marijuana, or were still concerned about their safety. There was, for example, no evidence that a pat frisk was conducted after the defendant was handcuffed. In these circumstances, with three officers present and the defendant handcuffed, even the earlier information giving rise to reasonable concern regarding the shotgun did not justify the search of the drawer incident to arrest to protect the officers. The marijuana evidence seized from the desk should therefore have been suppressed.

*Judgment reversed.*

*Verdict set aside.*

---

321, 325 (1987) ("taking action unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstances that validated the entry"). The Commonwealth also introduced no evidence explaining why it could not have gotten a timely warrant. See *Johnson* v. *United States*, 333 U.S. 10, 15 (1948); *Commonwealth* v. *Hall*, 366 Mass. 790, 801 (1975).

[10]LaFave, Search and Seizure § 6.3(c), at 306-307 (3d ed. 1996), cites factors courts look at when considering "where it would be possible for the arrestee to reach" including the following: (1) whether or not the arrestee was placed in some form of restraints; (2) the position of the officer vis-a-vis the defendant in relation to the place searched; (3) the ease or difficulty of gaining access within the container or enclosure searched; and (4) the number of officers present in relation to the number of arrestees or other persons.