COMMONWEALTH *vs.* ALAN SWANSON.

No. 01-P-485.

Suffolk. May 15, 2002. - November 15, 2002.

Present: ARMSTRONG, C.J., BROWN, & MILLS, JJ.

*Search and Seizure,* Probable cause, Exigent circumstances. *Constitutional Law,* Search and seizure. *Probable Cause.*

A judge erred in denying a criminal defendant's motion to suppress certain items recovered by a police officer from the defendant's bedroom in a rooming house in which the officer was present to execute a warrant to arrest another resident, where the officer's initial seizure of the defendant without any reasonable suspicion that the defendant was involved in criminal activity violated privacy protections, and where the subsequent warrantless search of the defendant's room, apart from lacking any basis to support the requisite exigent circumstances, was sufficiently intertwined with the initial illegality to render it unlawful as well. [461-464]

INDICTMENT found and returned in the Superior Court Department on January 29, 1998.

A pretrial motion to suppress evidence was heard by *Robert H. Bohn, Jr.,* J., and the case was tried before *John M. Xifaras,* J.

*Meryl A. Kukura* for the defendant.

*Paul B. Linn,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted by a Superior Court jury of possession of heroin, G. L. c. 94C, § 32, a lesser included offense of possession of heroin with intent to distribute for which he was indicted.[1] On appeal he argues that his pretrial motion to suppress evidence seized during a warrantless search of his residence was improperly denied. We agree.

---

[1]The defendant was also acquitted of possession of heroin with the intent to distribute same within 1,000 feet of a school zone. G. L. c. 94C, § 32J.

*Facts.* The motion judge made the following findings of fact which, to provide context to our analysis, we have supplemented with relevant uncontested evidence presented at the motion hearing. Boston police Officers Richard Walker and Vance Mills went to 146 Norwell Street in the Dorchester section of Boston to arrest Douglas Millington on the basis of an outstanding warrant. The officers spoke to Millington, who promised to surrender himself if police would give him that opportunity. Officers Walker and Mills granted Millington's request and left without taking him into custody.

Several days later, when Millington had failed to surrender himself as agreed, Officers Walker and Mills returned to 146 Norwell Street to execute the arrest warrant. As they arrived, a man opened the door to let several people out. This man admitted the officers without questioning their identities and followed them back inside.

The first floor of the three-family house in which Millington and the defendant both lived was, in the words of the motion judge, "basically a rooming house," with a common entrance area, hallways, and kitchen. A number of persons, including Millington and the defendant, had what the motion judge apparently deemed to be private bedrooms separate from these common areas. The parties do not dispute this characterization of the nature of the defendant's living space.

Having earlier visited 146 Norwell Street, the police officers knew that Millington occupied a room at the back of the house. While walking down the common hallway toward Millington's room, Officer Walker glanced into the defendant's room and saw that it was smoky and that a plate and razor blade were on the bed. He also saw that there were four persons in the room: the defendant, two other men, and a woman. Officer Walker commanded the four to stay in the room, and he stationed Officer Mills outside the room to ensure that no one left. Officer Walker then continued on to Millington's bedroom and took him into custody.

With Millington handcuffed, Officer Walker returned to the defendant's room. As Officer Walker reached the doorway, he saw the defendant make a tossing gesture toward his closet and then heard a "thud" as something hit the floor. Fearing that the

defendant might have discarded a weapon, Officer Walker immediately entered the defendant's room and conducted a search. In the closet, Officer Walker found several bundles of heroin, a roll of money, and some cut corners from glassine bags. No weapon was recovered. The defendant was placed under arrest.

*Analysis.* The defendant presented a two-pronged argument before the motion judge, and adopts, as he must, the same approach on appeal. See *Commonwealth* v. *Olson,* 24 Mass. App. Ct. 539, 544 (1987). In essence, he claims that Officers Walker and Mills violated the Commonwealth's common-law "knock and announce" rule by entering 146 Norwell Street without revealing their identities or stating their purpose. See *Commonwealth* v. *Sepulveda,* 406 Mass. 180, 181 (1989). The defendant goes on to argue that the subsequent discovery of drugs in his room was, albeit very indirectly, the result of this alleged illegal entry, and so suppression is required. In the alternative, the defendant asserts that, even if the initial entry was not unlawful, the officers' conduct once inside violated both the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution.

As an initial matter, there is a serious question as to the defendant's standing to assert any objection to the manner in which Millington's arrest warrant was executed.[2] See *Commonwealth* v. *Santoro,* 406 Mass. 421, 422 (1990). Even if Officers Walker and Mills were required to knock and announce their presence, it is difficult to see how this omission affected the defendant's substantive privacy rights — at least to a degree that would permit him to assert their failure to do so in pressing his own motion to suppress in connection with a largely unrelated search. See *ibid.* We do not, however, need to decide whether in this case the scope of the knock and announce rule and the constitutional limits on searches and seizures are precisely coincident.

We focus on the more difficult question posed by the

---

[2]Principles of automatic standing, at least in the form in which that concept survives in the Commonwealth, do not afford the defendant any comfort. See *Commonwealth* v. *Carter,* 424 Mass. 409, 411-412 & nn.3-4 (1997). See also *Commonwealth* v. *Santaliz,* 413 Mass. 238, 240 & n.5 (1992).

defendant's second claim, viz., that regardless of the legality of the initial police entry into 146 Norwell Street, Officer Walker violated both the Fourth Amendment and art. 14 when he ordered the defendant and his guests to remain in the defendant's room, posting Officer Mills outside the door to ensure that his order was obeyed, and then again when Officer Walker searched the defendant's room. Both parties agree that Officer Walker's actions ultimately amounted to a seizure, and so must be justified, if at all, by reference to the familiar constitutional standards.

A warrantless search or seizure in the home is presumptively invalid, but may be permitted where the Commonwealth makes an affirmative showing that, at the time of entry, police had probable cause to believe that a crime had occurred (or was ongoing or imminent) and that due to exigent circumstances it would have been impractical to obtain a warrant. See *Commonwealth* v. *Kiser*, 48 Mass. App. Ct. 647, 648 (2000). See also *Commonwealth* v. *Pietrass*, 392 Mass. 892, 897-898 (1984). The Commonwealth's burden of persuasion in cases involving intrusions into the home is very heavy; the Fourth Amendment and art. 14 were both enacted expressly to preserve the right of privacy in the home. See *Commonwealth* v. *Marquez*, 434 Mass. 370, 374 (2001), quoting from *Commonwealth* v. *Forde*, 367 Mass. 798, 805 (1975) ("right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy"). See also *Commonwealth* v. *Panetti*, 406 Mass. 230, 234 (1989).

Here, the motion judge found that while standing in a common area, Officer Walker peered into the defendant's room and observed the following: the room was smoky (but there was no evidence of any odor associated with the use of illegal drugs); there were four persons present; and on the bed was a plate and a razor blade (by no means uncommon items to be found in a bedroom, indeed just the opposite). No contraband was observed; no suspicious conduct was observed.[3] In these circumstances, we conclude that police did not have a reason-

---

[3]Parenthetically, we note that there was no expert opinion testimony proffered to the contrary.

able basis for believing that a crime was afoot. Contrast *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 797-798 (1992).

As a result, the initial seizure of the defendant and his guests, whether under the rubric of a *Terry*-type stop, see *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968), or arrest (the Commonwealth characterizes it as the former, the defendant the latter) was unlawful. Had Officer Walker searched the defendant's room at that point, there is no question that suppression would be required — not only did the officer lack reasonable suspicion that a crime was underway, there also was no evidence at this point to support a finding of exigent circumstances. The issue *is* blurred, however, by the fact that there was a delay between this initial seizure and Officer Walker's subsequent entry during which other, arguably inculpatory, observations were made.

Specifically, after the initial seizure, Officer Walker went to Millington's room to place him under arrest. As he returned to the defendant's room, Officer Walker saw the defendant toss something into the closet. The officer testified that he feared that it was a gun and so immediately entered the room. It remains for us to consider whether this additional piece of evidence tips the probable cause-exigent circumstances calculus in favor of the Commonwealth and, if so, whether the search was sufficiently divorced from the taint of the earlier illegal seizure to be lawful.

We resolve both of these points in favor of the defendant. Viewed either alone or together with all of the other police observations, there is nothing objectively inculpatory about someone tossing an object into his bedroom closet. Indeed, the only thing that makes the defendant's action suspicious at all is the fact that it occurred in the midst of his unlawful detention. Thus, but for the prior unlawful seizure, this additional observation would have availed the Commonwealth nothing in meeting its burden of persuasion.[4]

Police may not unlawfully encroach on a private place and then rely on any signs of consciousness of guilt precipitated by the illegal entry as justification for their actions. Applying "fruit of the poisonous tree" principles, see *Commonwealth* v. *Reyes*,

---

[4]Moreover, it would not be unreasonable to infer that the defendant's furtive actions almost certainly were induced by the initial illegal seizure.

423 Mass. 568, 573 (1996); *Commonwealth* v. *Ramos*, 430 Mass. 545, 550-551 (2000), we conclude that the evidence of the defendant tossing an object into his closet must be disregarded in assessing the lawfulness of the search. To do otherwise would be to condone bootstrapping of a sort that would frustrate the core goals of the constitutional privacy safeguards. See *Commonwealth* v. *Midi*, 46 Mass. App. Ct. 591, 595-596 (1999) (suppression required where evidence was uncovered during search that was deemed "exploitation of a prior illegality").

As for the Commonwealth's argument that Officer Walker's conduct was justified on the basis of safety concerns, the record simply does not support this view. Officer Walker testified that he saw the defendant toss something *into* his closet. Even if it were a gun, it posed little danger to police once discarded. Had Officer Walker testified that he had seen the defendant retrieve something from his closet that resembled a weapon, the outcome here might be different.[5] However, we need not speculate about how our approach would vary on the basis of different facts. There was no sufficient exigency here to justify the police conduct.

In sum, we conclude that Officer Walker's initial seizure of the defendant violated constitutional privacy protections; the officer lacked any reasonable suspicion that the defendant was involved in criminal activity. The subsequent warrantless search, apart from lacking any basis to support the requisite exigent circumstances, was sufficiently intertwined with this initial illegality to render it unlawful as well. All of the items recovered from the defendant's room must be suppressed.

Accordingly, we reverse the judgment, and the verdict is set aside. Additionally, we vacate the order denying the defendant's

---

[5]Although it did not factor into our decision, there is a potentially troubling dimension to this case. It appears that Officers Walker and Mills had been conducting surveillance of 146 Norwell Street for quite some time as part of an investigation into the sale of illegal drugs. In view of the course of events that gave rise to this appeal, it is worth observing that the execution of an arrest warrant in a residence may not be used as a pretext for conducting a search of a third party's residence. See *Commonwealth* v. *Allen*, 28 Mass. App. Ct. 589, 592-593 (1990). Needless to say, had police obtained a search warrant here, the result would have been different.

motion to suppress; a new order shall enter allowing the defendant's motion. The question of retrial, as always, must be left to the discretion of the Commonwealth.[6] The matter is remanded to the Superior Court for any further action.

*So ordered.*

---

[6]While it would appear that absent the evidence recovered from the defendant's closet the Commonwealth will not be able to seek a retrial, it is not for us to foreclose that possibility. Where the government's evidence, as presented to the jury, is legally sufficient, double jeopardy principles do not bar a retrial — even if essential elements of the government's case are excluded on appeal. See *Commonwealth* v. *Kater*, 432 Mass. 404, 406 (2000). The Commonwealth must be given an opportunity to fill those gaps with alternate evidence if possible.