Welch, Richard E., J.
The defendants have moved to suppress all evidence seized during a warrantless search of an apartment located at 471 South Broadway in Lawrence, Massachusetts. Although I credit the two police officers who testified at the motion to suppress, I find that there does not exist a sufficient nexus between the drugs delivered by Alberico Gomez on Bradford Street in Lawrence, Massachusetts and the apartment where he was allegedly living some distance away. In order to justify a warrantless search of that apartment, based upon exigency, the Commonwealth must establish that there was both probable cause and exigent circumstances. Although this is a very close case, I conclude that there was not sufficient probable cause to search the apartment.
I credit all of the testimony of Massachusetts State Police Sargent Canty and Lawrence Police Detective Rivet. Based upon the testimony, I conclude that these officers and other members of the Essex County Drug Task Force had conducted a search, pursuant to a search warrant, on June 5, 2002 at 53 Bradford Street in Lawrence, Massachusetts. In connection with the evidence seized pursuant to that search, an Angel Perez was arrested. He was in possession of 31 bags of heroin. The heroin bags contained a logo of a yellow sun. Mr. Perez quickly expressed the desire to cooperate with police authorities and indicated that he would be able to identify his supplier of the heroin who he called “Pimpe.” Mr. Perez gave a detailed physical description of “Pimpe” and a telephone number to contact Pimpe. Sargent Canty, who interviewed Mr. Perez, assumed that this number related to a cellular telephone that was not based at any precise land location.
The number was dialed by Sargent Canty and the phone handed to Perez who set up a delivery of heroin. Perez also described two vehicles that the supplier used (a green Taurus and a rust colored Honda). Perez informed Sargent Canty that Pimpe indicated that he would arrive in 15 minutes with 300 bags of heroin. Perez indicated that Pimpe had been his long-time supplier. The Essex County Drug Task Force set up surveillance for the anticipated delivery.
When “Pimpe” did not arrive in 15 minutes, Perez was directed to call him again. Pimpe answered the call and indicated that he would be there and again indicated that he would arrive in 15 minutes. Sure enough, in about 15 minutes, a green Taurus drove onto Bradford Street and pulled over to the curb near *344 Perez’s residence of 53 Bradford Street. Perez identified the driver of the green Taurus as his supplier “Pimpe.” This person’s real name is Alberico Gomez. Gomez got out of the green Taurus. Also in the car was a 15-year-old girl (later identified as Gomez’s daughter) and his 10-year-old son. All the occupants of the vehicle exited the vehicle and started to walk toward 53 Bradford Street. At this time, police officers arrested Gomez and detained his daughter. They found a large amount of heroin in the daughter’s backpack. The heroin was packaged in heat-sealed bags with the same sun logo as were the bags found earlier in Perez’s home.
Gomez was asked where he lived and he provided an address in North Lawrence. Sargent Canty and others had reason to disbelieve this information as his daughter, in a separate interview, indicated that he lived at the “Princeton Apartments” in South Lawrence. She did not know the street address of these apartments. The daughter, a Talisha Gomez, also stated that she had been with her father in his apartment that day and that they had directly come from the apartment to this location. Sargent Canty, and other members of the Task Force, requested that Talisha show them where this apartment was located. Talisha agreed to do this and was placed in a police vehicle. She directed Detective Rivet and the other police officers to the Princeton Apartments located at 481 South Broadway in Lawrence, Massachusetts. Once there, she directed them up to the second floor to apartment number 13 and indicated that this was the apartment of her father and from whence she had come.
By this time, Alberico Gomez had been placed under arrest and taken back to the Lawrence Police station by Sargent Canty. During the arrest, a set of keys were seized from Mr. Gomez.
The police wished to discover the location of the apartment because they believed that they had probable cause to obtain a search warrant for this location. They believed that they had probable cause to establish that drugs were located in this apartment and they simply needed to find out the precise location of the apartment. They also wished to determine if any other people were in the apartment and whether the keys seized from Gomez corroborated Talisha’s identification of the apartment as being that used by Mr. Gomez. The police intended to secure the apartment (from the exterior) if it turned out that Talisha could identify the apartment and if the keys fit the tumbler mechanism of the lock and, thus, corroborated her identification of the apartment.
Detective Rivet and other members of the Task Force accompanied Talisha Gomez to apartment 13 at 481 Broadway, South Lawrence. Detective Rivet knocked firmly on the door, with a single series of raps, and announced “police.” He did not say anything else. Upon announcing the presence of the police, Detective Rivet and others plainly heard loud sounds from the apartment. The sounds were of chairs or other pieces of furniture being knocked over and the breaking of glass. Considering this an exigent circumstance and fearing that people were fleeing or evidence being destroyed, Detective Rivet promptly used the keys seized from Gomez to open the door and he and other members of the Task Force entered the apartment. Upon entering the apartment, Detective Rivet saw the lower body of a individual flying out from the second-floor window. Upon looking down to the ground from the broken second-floor living room window, Detective Rivet saw one of the defendants on the ground and another standing beside him. Both Elliot Rivera, who had been on the ground, and Carlos Calcano began to flee. A chase ensued and they were later apprehended.
A protective sweep of the apartment revealed a large amount of heroin in plain view on the kitchen table. This information was relayed to Sargent Canty and Sargent Canty utilized this information in a search warrant that was later obtained. Sargent Canty came immediately to the apartment upon being informed of the developments and directed that the apartment be secured while he applied for a search warrant. The search warrant was issued.
I find that exigency did exist and that the exigency was not created by the police. When police officers announce their presence and hear the immediate knocking over of furniture and the breaking of glass inside of an apartment, they could reasonably believe that suspects are fleeing or evidence is being destroyed or both. The reason why the police knocked and announced their presence was perfectly legitimate. They needed to find the location of Alberico Gomez’s apartment. The best way to do this was to have his daughter direct them to the location because she did not know the precise address. Knocking on the door was not inappropriate and announcing their presence was not inappropriate. The police had a legitimate reason to determine whether others were in the apartment and to confirm whether or not Alberico Gomez lived at the apartment.
Where this warrantless search fails, however, is with the requirement of probable cause. In order to establish probable cause, there must be a reasonable nexus between the criminal activity of distributing heroin by way of delivering it in a car at Bradford Street in Lawrence, Massachusetts and the existence of drugs being located at Gomez’s home. The fact that Mr. Gomez was likely guilty of a crime “does not necessarily constitute probable cause to search the person’s residence.” Commonwealth v. Cinelli, 389 Mass. 197, 213 (1983). Here, there is no information that the drug transaction occurred anywhere close to the Gomez home. Contrast, Commonwealth v. Alcantara, 53 Mass.App. 591 at 593, 94 (2002) (controlled drug buy in the yard or common area of defendant’s home, sufficient nexus between cocaine *345 purchased and the apartment). Nor is there any indication that the police possessed a reliable informant identifying the location of Gomez’s “stash” location. See Commonwealth v. Blake, 413 Mass. 823, 827-28 (1992). Instead, the drug transaction occurred a considerable distance away from the Gomez residence.
It is true that the police knew that Gomez had attempted to hide the location of his residence (by providing a different residence location in North Lawrence) and that Gomez’s daughter stated that they came directly from Gomez’s apartment to the delivery location. This information does provide some reason to believe that Gomez’s apartment was the source of the drugs. Granted that this is a murky scale, but, it still falls on the side of the “hunch” rather than probable cause. The Commonwealth v. O’Day, 56 Mass.App. 833, 840 (2002), decision is instructive. In that case, the evidence that “the defendant lived at the address [and] on two occasions drove directly from home to work where he sold cocaine” was not sufficient to establish probable cause that cocaine existed within the home. In this case, there was no information that the defendant had taken the drugs from his home. Nor there was any observation of the defendant taking any parcel from his home to the car. See, e.g., Commonwealth v. DiStefano, 22 Mass.App. 535, 538-39 (1986). All we have is that the defendant lived at one location and routinely delivered quantities of heroin in his car to other locations. See Commonwealth v. Chongarlides, 52 Mass.App. 366, 370 (2001); Commonwealth v. Olivares, 30 Mass.App. 596, 600 (1991). All of the cases finding a sufficient nexus between a residence and a drug transaction contain more information that links the residence as the source of the drugs. Here, that information is lacking. For that reason, and that reason only, I must allow the motions to suppress.
This is admittedly a close case. The burden of proof, however, falls upon the Commonwealth. See Commonwealth v. Swanson, 56 Mass.App. 459 (2002). Although the police officers plainly were acting in good faith and attempting to follow up promptly on important information, the law requires more before there is warrantless search of a person’s residence. These two defendants have “automatic standing” to contest the search and thus the evidence obtained from the initial warrantless entry must be suppressed. Needless to say, the evidence of the drugs seen in plain view during the warrantless entry was the primary basis of the later search warrant. Therefore, all of the matters seized from the apartment must be suppressed.