## Commonwealth *vs.* James M. Peters.

Barnstable. March 4, 2009. - May 15, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Protective sweep, Emergency, Exigent circumstances.

A Superior Court judge properly allowed the criminal defendant's motion to suppress evidence seized from his home during the execution of a search warrant, the probable cause for which was based in large part on police officers' observations during the second of two warrantless "protective sweeps" of the residence, where, although at the time of the first protective sweep the officers had an objectively reasonable basis to believe that there might be a shooter or a victim in immediate need of help inside the residence, the officers no longer held such an objectively reasonable belief at the time they conducted the second sweep. [822-826]

Indictments found and returned in the Superior Court Department on August 3, 2006.

A pretrial motion to suppress evidence was heard by *Gary A. Nickerson*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Ireland*, J., in the Supreme Judicial Court for the county of Suffolk, and the case was transferred by him to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Barry P. Wilson (Michelle L. Brennan* with him) for the defendant.

*Julia K. Holler*, Assistant District Attorney (*Robert D. Moriarty*, Assistant District Attorney, with her) for the Commonwealth.

Gants, J. The defendant filed a motion in the Superior Court to suppress evidence seized by Falmouth police officers during the execution of a search warrant at his home. The probable cause for the warrant was based in large part on the police officers' earlier observation of a handgun and illegal drugs during

the second of two warrantless "protective sweeps" of the residence. After an evidentiary hearing, a judge entered a memorandum of decision and order in which he ruled that the evidence must be suppressed because, although the officers' initial entry and sweep through the residence was lawful based on the emergency exception to the warrant requirement, the second sweep constituted a general search conducted after the emergency had ended and, therefore, was unconstitutional. A single justice of this court granted the Commonwealth leave to file an interlocutory appeal and transferred the matter to the Appeals Court. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). The Appeals Court, in an unpublished memorandum and order pursuant to rule 1:28, reversed. *Commonwealth* v. *Peters*, 72 Mass. App. Ct. 1101 (2008). We granted the defendant's application for further appellate review.

"The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy. It was just this sort of intrusion that the Fourth Amendment [to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights] was designed to circumscribe by the general requirement of a judicial determination of probable cause." *Commonwealth* v. *DeJesus*, 439 Mass. 616, 619 (2003), quoting *Commonwealth* v. *Forde*, 367 Mass. 798, 805 (1975). The exigencies that may justify police entry in a home without a warrant are "a narrow category." *Commonwealth* v. *Young*, 382 Mass. 448, 456 (1981). One such exigency is the so-called "emergency" or, more precisely, "emergency aid" doctrine, which permits the police to enter a home without a warrant when they have an objectively reasonable basis to believe that there may be someone inside who is injured or in imminent danger of physical harm. See *Brigham City* v. *Stuart*, 547 U.S. 398, 403-404 (2006); *Mincey* v. *Arizona*, 437 U.S. 385, 392 (1978); *Commonwealth* v. *Snell*, 428 Mass. 766, 774-775, cert. denied, 527 U.S. 1010 (1999); *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 797-798 & n.2 (1992).

In this case we consider whether police officers who have entered and conducted a warrantless protective sweep of a home with an objectively reasonable basis to believe there may be a victim inside in need of help may conduct a second protective

sweep after the first sweep fails to locate any victim inside the residence. We conclude that they may, but only when, having considered the information learned from the first sweep, there continues to be an objectively reasonable basis to believe that an injured victim may still be inside. Because we agree with the judge that the officers no longer held such an objectively reasonable belief at the time they conducted the second sweep of the defendant's home, we affirm the judge's order allowing the motion to suppress.

*Facts.* We summarize the facts as found by the judge, supplementing them occasionally with undisputed evidence taken from the record.[1] On June 3, 2006, Officer Michael Rogers of the Falmouth police department visited a home on Seacoast Shores Boulevard in response to a reported disturbance. Officer Rogers spoke with one of the occupants of the home, Renato Bothelho, and learned that Bothelho had heard a loud noise in the rear of his house. Going into the kitchen to see what had happened, Bothelho saw his mother on her knees crying, apparently in response to the kitchen window breaking. Bothelho told Officer Rogers that he looked out the kitchen window and saw his neighbor at 24 Atwater Drive enter a vehicle and drive away.[2] There was a bullet hole in the rear kitchen window and a corresponding hole in the kitchen wall where a bullet had lodged. Sighting the angle of the bullet's trajectory, Officer Rogers presumed that the bullet had been fired from inside the house at 24 Atwater Drive.

Officer Rogers knocked on the door at 24 Atwater Drive, but no one responded to his knock. A man tending his garden next door informed Officer Rogers that he had heard arguing from the house and then saw someone drive away in a hurry. The man stated that he was concerned for the safety of the woman

---

[1]Some of the judge's findings may have been imprecise. The judge, for example, incorrectly reported the number, and identity, of officers who assisted in the warrantless searches at issue in this case. Any discrepancies between the judge's findings and the facts summarized above are minor and of no consequence to his conclusion that suppression of the evidence was warranted.

[2]Bothelho admitted during cross-examination at the motion hearing that he could not be sure whether the person entering the vehicle was in fact the defendant.

who lived in the house. Circling around the house, Officer Rogers found that a rear window had been broken, apparently by a flower pot thrown from inside the house.

Officer Rogers, now joined by a second Falmouth police officer, Robert Curtis, sought and received permission from a superior officer to enter 24 Atwater Drive to look for injured persons. Before entering, they donned body armor and helmets. Officer Curtis carried a shotgun; Officer Rogers drew his pistol. They kicked in the front door and quickly looked through the rooms on the first floor. Another officer, Chuck Martinson, entered the house, and the officers (now three) proceeded together to the second floor. They found nothing of concern.

Two dogs in the basement barked and snarled as the officers approached the basement steps, and the officers radioed for the assistance of an animal control officer to control the dogs. It took approximately fifteen minutes for help to arrive.[3] During that time, the three officers waited in the kitchen area of the house. Two animal control officers subsequently arrived and confined both dogs, allowing the police officers to check the basement area. Again, they found nothing of concern.

Returning to the main floor of the house, the officers discussed a recent highly publicized case in which an emergency sweep of a home conducted by Hopkinton police officers failed to locate the bodies of two murder victims. Officer Rogers advised the others that they should search the house more thoroughly for a possible shooting victim. Officers Curtis and Martinson went upstairs to search the second floor while Officer Rogers proceeded to the first-floor bedroom. Dropping to his knees to peer under the bed, Officer Rogers observed the butt end of a handgun protruding from between the mattresses. He also noticed, for the first time, two plastic bags lying on top of the bed, one containing what appeared to be marijuana, the other containing what appeared to be heroin. Officer Rogers summoned the others to the bedroom, and the three officers decided to secure the house until a search warrant could be obtained.

---

[3]Officer Rogers testified that from five to ten minutes elapsed before two animal control officers arrived at the house. The judge, however, credited the testimony of Officer Curtis that the wait time was approximately fifteen minutes.

Detective Kent H. Clarkson of the Falmouth police department prepared the application for the search warrant. The supporting affidavit recited that the handgun and drugs were observed as the officers "swept the residence for occupants," failing to mention that the contraband had not been discovered until the second of two "sweeps." The warrant issued, and the ensuing search of the house revealed a large capacity firearm, ammunition, and a significant quantity of cocaine and heroin. A grand jury returned eleven indictments against the defendant, most charging violations of drug and firearm statutes.

In a written memorandum and order allowing the defendant's motion to suppress the fruits of the search, the judge determined that the officers' initial entry and sweep of the house was based on their objectively reasonable belief that the situation was one of immediate peril and that a victim within the house might be injured or dead. The judge found that, during the initial sweep, the officers had " 'tunnel vision,' searching for either an assailant or a victim." The judge determined, however, that "the exigency ended when the initial sweep of the house was completed." The judge reasoned that "[t]ime had lapsed, the danger had passed, there was no concrete evidence of a struggle, of a missing person or of a documented history of domestic violence. . . . There being nothing found of a suspicious nature during the initial sweep of the premises, the second inspection lacked the objectively reasonable basis which permitted the initial sweep under our law." Adopting language in *Commonwealth* v. *Lewin (No. 1)*, 407 Mass. 617, 626 (1990), the judge concluded that the second pass through the house "was in fact and law a general search, conducted after the exigency generated by the need for a prompt protective search had ended." Because the search warrant was based on observations made during the officers' "second pass through the house," the judge ruled that the warrant was "hopelessly infected" and, therefore, that the evidence seized during the execution of the search warrant must be suppressed.

*Discussion.* We review the judge's conclusion under the familiar standard used in reviewing a motion to suppress: we accept as true the subsidiary findings of fact made by the judge absent clear error, but make our own independent determination on the judge's "application of constitutional principles to the facts as

found." *Commonwealth* v. *Stoute*, 422 Mass. 782, 783 n.1 (1996),
quoting *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977),
*S.C.*, 398 Mass. 806 (1986). As with respect to any evidentiary
hearing, we defer to the credibility findings of the judge, who
had the opportunity to observe and evaluate the witnesses as they
testified. See *Commonwealth* v. *Sparks*, 433 Mass. 654, 656
(2001), and cases cited.

Two warrantless searches occurred in this case. We consider
separately the lawfulness of the officers' actions in each, keep-
ing in mind that the burden rests with the Commonwealth to
demonstrate that a warrantless search, considering the totality of
the circumstances, fits within the emergency aid exception to
the warrant requirement. See *Thompson* v. *Louisiana*, 469 U.S.
17, 20 (1984); *Commonwealth* v. *Snell*, 428 Mass. 766, 774
(1999). See also *Commonwealth* v. *Young*, 382 Mass. 448, 456
(1981); *Commonwealth* v. *Forde*, 367 Mass. 798, 801 (1975)
(claim of exigency must be evaluated "considering the circum-
stances in their totality"). To fit within the emergency aid excep-
tion, a warrantless entry and protective sweep must meet two
strict requirements. First, there must be objectively reasonable
grounds to believe that an emergency exists. See *Commonwealth*
v. *McDermott*, 448 Mass. 750, 766, cert. denied, 128 S. Ct. 257
(2007); *Commonwealth* v. *Snell*, *supra*; *Commonwealth* v. *Pani-
aqua*, 413 Mass. 796, 798 (1992). Second, the conduct of the
police following the entry must be reasonable under the circum-
stances, which here means that the protective sweep must be
limited in scope to its purpose — a search for victims or suspects.
See *Commonwealth* v. *McDermott*, *supra* at 766-767; *Com-
monwealth* v. *Lewin (No. 1)*, *supra* at 622. Evidence observed
in plain view may be seized, but the sweep may not be expanded
into a general search for evidence of criminal activity. See
*id.*, citing *Mincey* v. *Arizona*, 437 U.S. 385, 395 (1978), and
*Thompson* v. *Louisiana*, *supra* at 21-23.

We agree with the judge that the officers' initial entry and
first protective sweep of 24 Atwater Drive met both of the
requirements of the "emergency aid" exception. Before they
entered the house, the officers had been informed that people
inside the house had been heard arguing, and that, moments
later, a man had driven away from the house. The officers knew

that a gun had been fired and that the gunshot likely had come from within the house. This information supported an objectively reasonable belief that a shooter or a victim in immediate need of assistance may be inside. The protective sweep was limited in scope to a cursory inspection for a shooter or victim, and reflected the officers' lawful purpose in entering the house and conducting the sweep.

The first protective sweep was complete when the police officers had secured the dogs and were able to clear the basement without incident. To justify the second protective sweep, the Commonwealth must demonstrate that the officers, considering the information learned from the first protective sweep, had an objectively reasonable basis to believe that emergency assistance was still required.

We agree with the judge that, once the first protective sweep was completed, the officers no longer had reasonable grounds to believe that anyone in the house required their assistance. While it was initially reasonable to infer that there may have been a shooter or a victim inside the house based on the proximity in time between the argument, the gunshot, and the defendant's departure, that inference became considerably weaker, indeed unreasonable, after the first protective sweep. During the roughly fifteen to twenty minutes that the officers had been in the three-bedroom home, they saw and heard nothing to indicate imminent danger. There was no sign of a struggle, no blood, and, apart from barking dogs, no unusual sounds.[4] Compare with *Commonwealth* v. *Young, supra* at 450, 457 (police found signs of struggle and trail of blood); *Commonwealth* v. *Moore*, 54 Mass. App. Ct. 334, 339 (2002) (police smelled gunpowder and found spent shell casings during protective sweep). The officers had no information indicating that any occupant of the house had a history of domestic abuse or a record of violence. Nor had it been reported that any occupant of the house was missing or injured. Put simply, the caution that justified their original entry and protective sweep was no longer reasonable. See 3 W.R. LaFave, Search and Seizure § 6.6(a), at 452-453 (4th ed. 2004), quoting *State* v. *Hetzko*, 283 So. 2d 49, 52 (Fla. Dist. Ct. App. 1973)

---

[4]There was testimony that the house was strewn with clothing as if someone was packing but no testimony that the officers were alarmed by the disarray.

(question is whether "officers would have been derelict in their duty had they acted otherwise").

There undoubtedly are circumstances in which two warrantless protective sweeps of a home in quick succession, one rapid without attention to detail to locate a potential assailant or assailants, and the second more deliberate in search of persons who may be injured, would both fall within the permissible scope of the emergency aid exception. We do not declare a "one sweep rule" through this decision. A second warrantless protective sweep may be lawfully conducted, but only when, in light of all the circumstances known to the officers at the time, there continues to be an objectively reasonable basis to believe that there is someone in the home in need of assistance. We simply do not find that there continued to be an objectively reasonable basis here.

The Commonwealth argues that we should not second-guess the officers' response to the situation at hand, and that their search for a potential victim in places that had been overlooked during the first sweep was an appropriate course of action. We agree that "whether an exigency existed, and whether the response of the police was reasonable and therefore lawful, are matters to be evaluated in relation to the scene as it could appear to the officers at the time, not as it may seem to a scholar after the event with the benefit of leisured retrospective analysis." *Commonwealth v. Young, supra* at 456. We do not rely on the benefit of hindsight when we recognize that, once three officers had swept through every room and saw nothing suspicious, it was extraordinarily unlikely that a dead or injured victim was within the house. Nor did the judge rely on hindsight when he rejected Officer Rogers's testimony that the true purpose of the officers' second pass through was to look for potential victims. The judge determined, as a matter of fact, that Officer Rogers's claim "that the second pass through the house was done to locate a concealed victim [fell] short," and concluded, as a matter of law, that "[h]e didn't conduct a sweep, he conducted a search." The judge essentially found that Officer Rogers recognized how unlikely it was that the first sweep had failed to locate an injured person in the house, and therefore did not credit his testimony that the purpose of the second sweep was to continue to look for a victim.[5]

---

[5]The Appeals Court "view[ed] the record differently," and concluded that

We conclude that the Commonwealth has failed to demonstrate that, after the first protective sweep ended, there were still objectively reasonable grounds for the officers to believe that emergency assistance was still required. Because their second pass through the house does not fall within the emergency aid exception to the warrant requirement, it was constitutionally impermissible under art. 14.[6] The judge properly ordered the evidence suppressed.

*Order allowing the motion to suppress affirmed.*

the second sweep was simply a more careful search for victims. We understand the judge's finding to reflect a negative assessment of Officer Rogers's credibility as a witness and defer, as an appellate court must, to the judge's evaluation. Although the judge did not find that Officer Rogers had meant to deceive the court, he plainly did not believe Officer Rogers's explanation for the second pass-through. The judge stated, "At best, Rogers' explanation as to the purpose of this search was his subjective belief or an after the fact rationalization for something done out of human curiosity and the desire to be thorough."

[6]Having reached this conclusion under art. 14 of the Massachusetts Declaration of Rights, we need not determine whether the same conclusion would be required by the Fourth Amendment to the United States Constitution.