## Commonwealth *vs*. Heather M. Duncan.

Essex. December 3, 2013. - April 11, 2014.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Animal. Constitutional Law,* Search and seizure. *Search and Seizure,* Emergency. *Practice, Criminal,* Motion to suppress.

Discussion of the emergency aid exception to the warrant requirement. [749-751]

This court concluded that warrantless searches of a home are permissible, under the emergency aid exception to the warrant requirement, where they are intended to render emergency assistance to protect nonhuman animal life, although the reasonableness of such a search must be determined on a case-by-case consideration of the totality of the circumstances. [751-755]

Complaint received and sworn to in the Lynn Division of the District Court Department on April 19, 2011.

A pretrial motion to suppress evidence was heard by *Ellen Flatley*, J., and a question of law was reported by her to the Appeals Court.

The Supreme Judicial Court granted an application for direct appellate review.

*Paul C. Wagoner*, Assistant District Attorney, for the Commonwealth.

*Travis J. Jacobs* for the defendant.

The following submitted briefs for amici curiae:

*Virginia F. Coleman* for Animal Legal Defense Fund & others.

*Michael W. Morrissey*, District Attorney, & *Tracey A. Cusick*, Assistant District Attorney, for the Attorney General & others.

*John M. Collins* for Massachusetts Chiefs of Police Association, Inc.

*Carolyn C. Van Tine* for Animal Control Officers Association of Massachusetts.

*Kate M. Fitzpatrick*, of New York; *Jonathan R. Lovvorn, Kimberly D. Ockene, & Aaron D. Green*, of the District of

Columbia; *Elise VanKavage*, of Utah; & *Michael G. Bongiorno* for Humane Society of the United States & another.

*Stacy Wolf* & *Jennifer H. Chin* for American Society for the Prevention of Cruelty to Animals.

LENK, J. This case presents the question whether the emergency aid exception to the warrant requirement of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights extends to police action undertaken to render emergency assistance to animals.[1]

After receiving a telephone call from the defendant's neighbor, police entered the defendant's front yard without a warrant and seized three dogs that had been left outside in severely inclement winter weather. Two of the dogs appeared to be dead, and one was extremely emaciated. The defendant was charged with three counts of animal cruelty under G. L. c. 272, § 77. A District Court judge granted the defendant's motion to suppress evidence obtained as a result of the warrantless search but subsequently reported a question of law, pursuant to Mass. R. Crim. P. 34, as amended 442 Mass. 1501 (2004): "Does the 'pure emergency' exception to the warrant requirement extend to animals?"

The question is one of first impression for this court. In agreement with a number of courts in other jurisdictions that have considered the issue, we conclude that, in appropriate circumstances, animals, like humans, should be afforded the protection of the emergency aid exception. We therefore answer the reported question in the affirmative.

1. *Factual background and prior proceedings.* We summarize the facts found by the motion judge. On January 2, 2011, the defendant called police to her home to serve a restraining order on her husband. The home was surrounded by a six-foot tall

---

[1] We acknowledge the amicus briefs on behalf of the Commonwealth from the Attorney General and the District Attorneys for the Norfolk, Berkshire, Bristol, Hampden, Middle, Northern, Northwestern, Plymouth, and Suffolk Districts; Massachusetts Chiefs of Police Association, Inc.; Animal Control Officers Association of Massachusetts; Animal Legal Defense Fund, Animal Rescue League of Boston, National District Attorneys Association, and Association of Prosecuting Attorneys; Humane Society of the United States and Best Friends Animal Society; and American Society for the Prevention of Cruelty to Animals.

privacy fence, reinforced by tarps, plastic strips, and plywood. Entry to the property was secured by a padlocked gate in the fence.

While at the defendant's home, police officers noticed dogs in the front yard that were "in bad shape" and "in need of help." Officers asked the defendant to whom the dogs belonged and whether they were being cared for. The defendant responded that the dogs belonged to "the Duncan[s]" and that she was taking care of them. The officers did not follow up on the state of the dogs at that point, nor did they call an animal control officer to the residence.

On January 8, 2011, the defendant's neighbor telephoned police to report two deceased dogs on the defendant's property and a third "emaciated" dog. In the intervening six days, it had snowed intermittently; the weather on that day was "bleak, snowy, and freezing." The defendant's neighbor greeted police when they arrived at the defendant's home at approximately 3:15 P.M. The neighbor informed the officers that she had gone to the defendant's home to retrieve a borrowed snow shovel; no one responded to her arrival, but she heard a dog barking and looked through or over the privacy fence and saw what she knew to be the defendant's dogs. Two apparently were deceased.

The officers heard a dog "whimpering and very hoarsely and weakly barking as if it had almost lost its voice, noting that it sounded like an animal in distress." In order to get a better view into the yard, they stepped on a nearby snowbank that was several feet in height. Inside the yard, they saw two motionless dogs, apparently frozen and leashed to the fence, partially inside and partially outside a doghouse. A third dog, alive but emaciated, was leashed to the fence and barking. The officers did not see any food or water laid out for the dogs.

Due to the padlocked gate, police were unable to access the front door of the house. Instead, they engaged the siren, emergency lights, and air horn of their police cruiser to alert the residents of their presence, to no avail. One officer also directed another at the police station to use the local water and sewer directory to reach the registered owner of the property. These efforts were unsuccessful. Pursuant to police protocol for hand-

ling animal-related emergencies, officers then contacted the fire department to remove the padlock on the gate and enter the yard. After police gained entry to the yard, they contacted animal control; an animal control officer arrived and took custody of the three dogs. All of the responders cleared the premises by 4:56 P.M.

On April 19, 2011, a complaint issued in the District Court charging the defendant with three counts of animal cruelty pursuant to G. L. c. 272, § 77. The defendant subsequently filed a motion to suppress observations by police and physical evidence that gave rise to the charges. After an evidentiary hearing, the judge allowed the motion, ruling that "[o]ur courts have not as yet applied the emergency exception to animals."[2] The judge determined also that police had probable cause to believe that the crime of animal cruelty had been committed. However, the judge reported the following question of law, pursuant to Mass. R. Crim. P. 34: "Does the 'pure emergency' exception to the warrant requirement extend to animals?" Trial was continued pending resolution of the reported question.

2. *Discussion.* a. *Emergency aid exception to the warrant requirement.* "The right of police officers to enter into a home, for whatever purpose, represents a serious governmental intrusion into one's privacy. It was just this sort of intrusion that the Fourth Amendment [to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights] [were] designed to circumscribe by the general requirement of a judicial determination of probable cause." *Commonwealth* v. *Peters,* 453 Mass. 818, 819 (2009), quoting *Commonwealth* v. *DeJesus,* 439 Mass. 616, 619 (2003). The emergency aid doctrine comprises one entry in that "narrow category" of cases where an exception to the warrant requirement is justified. *Commonwealth* v. *Young,* 382 Mass. 448, 456 (1981), *S.C.* 399 Mass. 527 (1987). This exception "permits the police to enter a home without a warrant when they have an objectively reasonable basis to believe that there may be someone inside who is injured or in

---

[2]Concluding that the status of the emergency aid exception as applied to animals was unclear, the judge made no express finding regarding whether an emergency situation did, in fact, exist on the afternoon in question.

imminent danger of physical harm."[3] *Commonwealth* v. *Peters, supra* at 819, and cases cited. Such scenarios present one type of "exigent circumstance" that obviates the need for a warrant, see *Brigham City* v. *Stuart,* 547 U.S. 398, 403 (2006), in part because it would be impracticable to obtain a warrant under the circumstances. See *Commonwealth* v. *Forde,* 367 Mass. 798, 800-801 (1975). In addition, "[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Commonwealth* v. *Snell,* 428 Mass. 766, 774, cert. denied, 527 U.S. 1010 (1999), quoting *Mincey* v. *Arizona,* 437 U.S. 385, 392 (1978).

Although the broader "exigent circumstances" exception generally requires a showing of probable cause, such a showing is not necessary in emergency aid situations, because the purpose of police entry is not to investigate criminal activity.[4] See *Commonwealth* v. *Entwistle,* 463 Mass. 205, 214-215 (2012), cert. denied, 133 S. Ct. 945 (2013); J.A. Grasso, Jr., & C.M. McEvoy, Suppression Matters Under Massachusetts Law §§ 14-1[a], 14-1[c][3][vi] (2012-2013). Instead, a warrantless entry "must meet two strict requirements. First, there must be objectively reasonable grounds to believe that an emergency exists. . . . Second, the conduct of the police following the entry must be reasonable under the circumstances . . . ." (Citations omitted.) *Commonwealth* v. *Peters, supra* at 823.

---

[3]Although the emergency aid exception to the warrant requirement is "closely related" to the so-called community caretaking exception, *Commonwealth* v. *Knowles,* 451 Mass. 91, 96 (2008), the latter has been applied almost exclusively in situations involving searches or seizures of automobiles. See, e.g., *Commonwealth* v. *Mateo-German,* 453 Mass. 838, 842-843 (2009) (police officer acted pursuant to community caretaking function when he checked on vehicle that had abruptly slowed down on highway and had run out of gasoline); *Commonwealth* v. *Evans,* 436 Mass. 369, 373 (2002) ("The trooper, as part of his community caretaking responsibilities, appropriately decided to check the status of the vehicle" that was idling in breakdown lane).

[4]Exceptions involving other types of exigent circumstances are similarly inapplicable here. For example, this case does not involve the possibility of the imminent destruction of evidence. Cf. *Commonwealth* v. *Ortiz,* 435 Mass. 569, 574 (2002) ("circumstances justified the warrantless entry and search under the destruction of evidence exigency" where unruly crowd threatened to rush crime scene and undermine its integrity).

Where these two conditions have been satisfied, warrantless entry into a home is permissible.

b. *Warrantless searches or seizures to protect nonhuman animal life.* We turn to the question whether warrantless searches of a home are permissible where they are intended to render emergency assistance to protect nonhuman animal life. Stated differently, the question is whether the public interest underlying the emergency aid exception, in facilitating immediate first aid response to those in danger of harm or physical injury, applies with equal force to animals.

The scope and nature of any such public interest can be discerned from "legislative enactments and the policies reflected in them," which are "relevant as we consider the boundaries of the judicially established exceptions to the warrant requirement." *State* v. *Fessenden*, 258 Or. App. 639, 648-649, review granted, 357 Or. 597 (2013). Our statutes evince a focus on the prevention of both intentional and neglectful animal cruelty.[5] See, e.g., G. L. c. 272, § 77. In addition to outlawing intentional acts of cruelty against animals, such as torture, mutilation, and overworking, G. L. c. 272, § 77, makes it a crime for the custodian of an animal to "unnecessarily fail[] to provide it with proper food, drink, shelter, sanitary environment, or protection from the weather." In a 2012 enactment, An Act Further Regulating Municipal Animal Control, St. 2012, c. 193 (act), the Legislature took steps to protect dogs in particular, by prescribing the duration and conditions under which they may be restrained outside. See G. L. c. 140, § 174E (requiring, inter alia, that dogs confined outside be provided with clean water and appropriate shelter).

A web of other statutes also regulates human interaction with animals, for example, by prohibiting certain means of putting animals to death; imposing restrictions on railroad corporations that transport animals; and restricting the use of animals in scientific experimentation. See G. L. c. 272, §§ 80E, 80G,

---

[5]"Cruelty in this context is '[s]evere pain inflicted upon an animal . . . without any justifiable cause.' " *Commonwealth* v. *Zalesky*, 74 Mass. App. Ct. 908, 909 (2009), quoting *Commonwealth* v. *Lufkin*, 7 Allen 579, 581 (1863). It excludes activities involving the killing of an animal for legally sanctioned purposes, such as hunting and food production. See, e.g., G. L. c. 94, §§ 119-125; G. L. c. 131, § 5.

81. As part of the 2012 act, the Legislature authorized judges to consider the welfare of household pets when issuing protective orders; judges "may make a finding, based upon the totality of the circumstances, as to whether there exists an imminent threat of bodily injury to" a pet, and shall notify law enforcement officials if such a finding is made. G. L. c. 209A, § 11. This public policy promoting the humane treatment of animals, as reflected in the statutes of the Commonwealth, "is a basic source of law when no previous decision or rule of law is applicable." *Commonwealth* v. *Yee*, 361 Mass. 533, 538 (1972).

In light of the public policy in favor of minimizing animal suffering in a wide variety of contexts, permitting warrantless searches to protect nonhuman animal life fits coherently within the existing emergency aid exception to the warrant requirement, intended to facilitate official response to an "immediate need for assistance for the protection of *life* or property" (emphasis supplied). *Commonwealth* v. *Snell, supra* at 774, quoting *Commonwealth* v. *Bates*, 28 Mass. App. Ct. 217, 219 (1990). It is therefore reasonable "to render aid to relatively vulnerable and helpless animals when faced with people willing or even anxious to mistreat them." *State* v. *Bauer*, 127 Wis. 2d 401, 409 (Ct. App. 1985). See *Commonwealth* v. *Entwistle, supra* at 213, quoting *Commonwealth* v. *Townsend*, 453 Mass. 413, 425 (2009) ("the 'ultimate touchstone' of both the Fourth Amendment and art. 14 is reasonableness").

In addition to promoting life-saving measures, the ability to render such assistance vindicates the legislative framework for preventing cruelty to animals, particularly the provision regulating the conditions under which dogs may be kept outside. See G. L. c. 140, § 174E. Indeed, it would be illogical and inconsistent to permit the prosecution of dog owners for exposing their dogs to conditions that "could injure or kill [them]" in ill-equipped yards, G. L. c. 140, § 174E (*f*) (1), only after the harm to animal life has taken place, while hindering the ability of police proactively to prevent such injury. Furthermore, the inclusion of animals within the ambit of the emergency aid exception enables trained personnel, such as police or animal control officers, to respond to animal emergencies, rather than lay people. In the absence of such trained professionals render-

ing care and assistance, untrained citizens may attempt to intervene, potentially causing further harm to the animal, to themselves, or to other members of the community, should an injured animal end up loose on public streets.

We therefore conclude that our prior formulations of the emergency aid exception encompass warrantless searches to protect nonhuman animal life. Thus, under both the Fourth Amendment and art. 14, the exception permits the police in certain circumstances "to enter a home without a warrant when they have an objectively reasonable basis to believe that there may be [an animal] inside who is injured or in imminent danger of physical harm."[6] *Commonwealth* v. *Peters*, *supra* at 819. Accordingly, we answer the reported question in the affirmative.[7]

This conclusion accords with that of courts in other jurisdictions that have considered the issue, including the highest courts of the District of Columbia and Montana, which have held that "needless suffering and death" of animals is an "exigent circumstance[] justifying the warrantless search for and rescue of the animals." *State* v. *Stone*, 321 Mont. 489, 498 (2004). Accord *Tuck* v. *United States*, 477 A.2d 1115, 1120 (D.C. 1984). See also *State* v. *Goulet*, 21 A.3d 302, 311-315 (R.I. 2011) (affirming denial of motion to suppress where entry permissibly aimed to preserve life of dog that homeowner threatened to shoot); *Hegarty* v. *Addison County Humane Soc'y*, 176 Vt. 405, 410 (2004), citing *Siebert* v. *Severino*, 256 F.3d 648, 657 (7th Cir. 2001) ("Exigent circumstances are a well-established exception to the warrant requirement, . . . even in cases involving the seizure of animals"). Acknowledging that "[s]tandards of decency have evolved," *People* v. *Chung*, 185 Cal. App. 4th 247, 258 n.4 (2010), quoting *Graham* v. *Florida*, 560 U.S. 48, 85 (2010) (Stevens, J., concurring), these courts have recognized

---

[6]Where an animal's condition has been inflicted lawfully, see note 5, *supra*, the emergency aid exception will not apply. Cf. *State* v. *Fessenden*, 258 Or. App. 639, 649, review granted, 357 Or. 597 (2013).

[7]In one rendering, the motion judge had phrased the reported question as "whether the situation presented to the police on January 8th was a 'pure emergency' and, if so, whether an emergency exception to the warrant requirement should be recognized for the protection of animals." We answer only the reported question of law, not the question of fact. See *Commonwealth* v. *Bankert*, 67 Mass. App. Ct. 118, 120 (2006), citing *Commonwealth* v. *Giang*, 402 Mass. 604, 608 (1988).

a public interest "in the preservation of life in general and in the prevention of cruelty to animals in particular." *Tuck* v. *United States, supra* at 1120.

The emergency aid doctrine remains a narrow exception to the warrant requirement. Its application to nonhuman animals does not expand the exception or alter the essential framework for determining when a warrantless police search of the home is permissible under it. As in instances involving humans, there must be objectively reasonable grounds to believe that an emergency exists, and police conduct following entry must be reasonable under the circumstances. See *Commonwealth* v. *Peters, supra* at 823. However, when the exception applies to nonhuman animals, there are additional considerations to be taken into account. When there is an objectively reasonable belief that an emergency exists involving human life, i.e., that a person "is injured or in imminent danger of physical harm," *id.* at 819, nothing further ordinarily is necessary to justify a warrantless police entry. In contrast, where nonhuman animal life is similarly imperiled, other factors appropriately enter the calculus in determining whether such entry is justified.

One such factor that other courts have looked to is whether the animal's condition was caused by human abuse or neglect. See *Davis* v. *State*, 907 N.E.2d 1043, 1050 (Ind. Ct. App. 2009) ("circumstances of animal cruelty [by humans] may create exigent circumstances to permit a warrantless search of the curtilage"). As against the countervailing norm of privacy within one's home, there is an especially strong societal interest, suggested by the legislative enactments discussed *supra*, in avoiding injury to animals inflicted by humans; a concern with preventing harm to animals, no matter what the source, does not find the same support. Although true emergencies that do not arise as a result of any human action may befall animals, the threshold for police entry in such situations will be considerably higher.

Other considerations that courts have weighed include the species of the animal in need, *State* v. *Fessenden*, 258 Or. App. 639, 649, review granted, 357 Or. 597 (2013); the nature of the privacy interest at issue, DiCesare *vs.* Stout, U.S. Ct. App., No. 92-7116 (10th Cir. Apr. 23, 1993); whether any efforts were

made to obtain the consent of the property owner prior to making entry onto the property, *Suss* v. *American Soc'y for the Prevention of Cruelty to Animals,* 823 F. Supp. 181, 187 (S.D. N.Y. 1993); and the extent of the intrusion, including any damage done to the property. *Id.* (warrantless action to save cat unreasonable where, inter alia, exterior building wall was demolished). Inevitably, of course, there will be countless and varied iterations of emergency aid scenarios involving animals, and these factors do not purport to be exhaustive. The reasonableness of the search must be determined on a case-by-case basis upon consideration of the totality of the circumstances.

3. *Conclusion.* For the reasons stated, we answer the reported question in the affirmative. The matter is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*