NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12151


COMMONWEALTH  vs.  KYLE TUSCHALL.



Middlesex.     November 9, 2016. - March 8, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.



Constitutional Law, Search and seizure, Probable cause.  Search
    and Seizure, Emergency, Probable cause, Fruits of illegal
    search.  Probable Cause.




    Indictments found and returned in the Superior Court
Department on August 12, 2014.

    Pretrial motions to suppress evidence were heard by Thomas
P. Billings, J.

    An application for leave to prosecute an interlocutory
appeal was allowed by Botsford, J., in the Supreme Judicial
Court for the county of Suffolk, and the appeal was reported by
her to the Appeals Court.  The Supreme Judicial Court granted an
application for direct appellate review.


    Randall F. Maas, Assistant District Attorney, for the
Commonwealth.
    Jessica LaClair for the defendant.


    LOWY, J.  Following a report of a "smell like drugs"

emanating from the apartment of the defendant, police made two

warrantless entries into his apartment.  Based on observations of paraphernalia related to the manufacture of crystal methamphetamine, the police then obtained a warrant.  The defendant was subsequently arrested and charged with, among other things, drug related offenses.

The defendant filed two motions in the Superior Court -- one to suppress the evidence seized during the execution of the search warrant and another to suppress statements he made to police following his arrest.  The judge granted both motions after an evidentiary hearing.  With respect to the first motion, the judge determined that no emergency justified the warrantless entries, without which the Commonwealth could not establish the probable cause necessary for the subsequent warrant.  Regarding the second motion, the judge concluded the defendant's statements to the police were the "fruit of" the defendant's unlawful arrest.

The Commonwealth appealed from the judge's decision.  A single justice in the county court allowed the Commonwealth's application for interlocutory review and reported the matter to the Appeals Court.  We subsequently allowed the defendant's motion for direct appellate review.  We affirm.

Background.  The motion judge made the following factual findings, which we accept absent clear error.  Commonwealth v. Entwistle, 463 Mass. 205, 209 (2012), cert. denied, 133 S. Ct.

945 (2013). We review de novo the judge's application of constitutional principles to the facts. Commonwealth v. Phillips, 452 Mass. 617, 624 (2008).

On June 11, 2014, the Watertown police received a telephone call from the defendant's neighbor at a multifamily residential property. The neighbor reported a "smell like drugs" coming from the defendant's apartment. The police did not respond to the call until the next day, when a detective called the neighbor. The neighbor complained that the odor was causing her to suffer headaches and was adversely affecting her dog. She further described the odor as "skunky" and "minty." She also stated that the windows of the neighbor's apartment were "sealed," and there was a bright light shining in one of the defendant's apartment's rooms. The police did not visit the apartment on June 12.

On June 13, 2014, two detectives traveled to the apartment building, where they met with the neighbor who had complained two days earlier. The night before the detectives arrived, the neighbor spent the night elsewhere to avoid further exposure to the odor.

When the detectives knocked on the defendant's door, no one answered. The detectives could not see inside the defendant's apartment from the sidewalk because the windows were covered from inside the apartment. Beneath a running air conditioner

extending from one of the apartment's windows, the detectives smelled a strong chemical odor.

The complaining neighbor informed the detectives that two people, the defendant and his girl friend, lived in the apartment. The two usually left the apartment together in the morning, but that morning, the neighbor had seen the defendant leave alone. The detectives obtained the girl friend's cellular telephone number through the building's owner. Unable to reach the girl friend on her cellular telephone, the detectives decided to enter the apartment to look for her.

The building owner's son led the detectives through the basement to the door of the defendant's apartment. The smell grew stronger in the basement. One of the detectives felt a dry, scratchy sensation in his throat, and his eyes began to burn and water. Before entering the apartment, the detectives identified themselves as police and said, "Is anyone home?" When no one responded, they entered.

Inside the apartment, the detectives went room to room in search of the girl friend, calling her by name. In the course of discovering that no one was present, one detective saw items he believed to be consistent with small-scale methamphetamine production. The detectives did not open any containers or drawers. Now concerned by the risk posed to other residents of the building, due to the volatile chemicals used in

methamphetamine production, the detectives contacted the fire department and a colleague, Detective Gutwill, who had more expertise with methamphetamine laboratories (lab).

When Detective Gutwill arrived, he could not tell, by the smell alone, whether the source of the odor posed a danger. He was, however, concerned that the odor was the result of the "one pot" method of methamphetamine manufacture, which presents a risk of explosion. He donned a respirator and protective clothing and entered the apartment. He found no evidence of a "one pot" manufacturing method and determined that there was no immediate risk of danger.

Relying on observations from the two warrantless entries, the police obtained a search warrant. The defendant arrived while the police were executing the warrant. He was arrested and transported to the Watertown police station.

While in custody at the police station, the defendant was questioned by the police. The police informed him of the Miranda rights, including the right to have an attorney present and rights pursuant to Commonwealth v. Rosario, 422 Mass. 48, 56-57 (1996). He waived his Miranda and Rosario rights, agreed to speak with the police, and made some incriminating statements.

Discussion. The Commonwealth argues that the judge erred in granting both motions to suppress. As to the first motion,

the Commonwealth argues that both searches were lawful under the emergency aid exception to the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.  With regard to the second motion, the Commonwealth argues that the defendant's statements to the police should not have been suppressed, because they were not the fruit of unlawful searches.  In the alternative, the Commonwealth argues that, even if the searches were unlawful, the defendant's statements were sufficiently attenuated from the unlawful conduct to escape the reach of the exclusionary rule.

1.  The warrantless searches.  Under the Fourth Amendment and art. 14, a search of an individual's home must be reasonable.  A search conducted without a warrant is presumptively unreasonable.  Brigham City v. Stuart, 547 U.S. 398, 403 (2006).  Warrantless searches may be justifiable, however, if the circumstances of the search fall within an established exception to the warrant requirement.  Under the exclusionary rule, evidence seized pursuant to an unreasonable search generally will be suppressed.  See J.A. Grasso, Jr. & C.M. McEvoy, Suppression Matters Under Massachusetts Law § 20-2[a] (2017).

One such exception to the Fourth Amendment and art. 14 is the "emergency aid exception."  Commonwealth v. Duncan, 467 Mass. 746, 749, cert. denied, 135 S. Ct. 224 (2014).  To meet

the requirements of the exception, there must be "objectively reasonable grounds to believe that an emergency exists . . . [and] the conduct of the police following the entry must be reasonable under the circumstances" (citation omitted). Id. at 750.

The emergency aid exception applies in two circumstances relevant to this case. First, a warrantless search is reasonable when law enforcement possess an objectively reasonable basis to conclude that "prompt intervention is necessary to prevent a threatened fire, explosion, or other destructive accident." Commonwealth v. DiGeronimo, 38 Mass. App. Ct. 714, 723 (1995). See Commonwealth v. Marchione, 384 Mass. 8, 11-12 (1981) (entry reasonable to prevent potential explosion from volatile liquids stored near incendiary device). Second, the emergency aid exception "permits the police to enter a home without a warrant when they have an objectively reasonable basis to believe that there may be someone inside who is injured or in imminent danger of physical harm." Commonwealth v. Peters, 453 Mass. 818, 819 (2009).

A police officer's "'subjective motivation [for entry] is irrelevant.'" Entwistle, 463 Mass. at 214, quoting Brigham City, 547 U.S. at 404. The emergency aid exception does not require that police have probable cause that a crime has been committed, because the purpose of the entry is to prevent harm

stemming from a dangerous condition, not to investigate criminal activity. See Duncan, 467 Mass. at 750 (2014).[1]

a. The initial entry. The Commonwealth suggests that the initial entry was justified due to the danger posed by the fumes to the residents in the building and to the defendant's girl friend, whom the police were concerned might be inside the apartment.

Prior to the first entry, there was no objectively reasonable basis upon which to conclude that residents of the building faced an "imminent threat of death or serious injury" due to the effects of the fumes, or that the fumes constituted a danger comparable to that of a "fire, explosion, or other destructive accident." DiGeronimo, 38 Mass. App. Ct. at 723. Indeed, two days had elapsed before the police responded to the initial complaint.[2] Moreover, unpleasant as the smell may have been, the discomfort described by the neighbor did not suggest the existence of an emergency situation requiring immediate intervention. When she first met the police two days after

---

[1] This is in contrast to the broader "exigent circumstances" exception. Exigent circumstances justifying a warrantless entry exist where the police have probable cause of criminal activity, but where the time required to obtain a warrant would defeat the purposes of the search -- such as when delay would result in the destruction of evidence. See Duncan, 467 Mass. at 750-751 & n.4.

[2] The police certainly could have advised the neighbor to contact her landlord regarding a nuisance claim, or the Department of Public Health or the fire department to address the odor.

making her initial complaint, the neighbor said that she had slept elsewhere to avoid the smell, and that she had seen the defendant leave his apartment, in apparently fine health despite his presumably longer exposure to the fumes at a closer proximity. Apart from the complaining neighbor's headache, there were no reports of illness or negative health consequences stemming from the smell, and no clear indication that the smell's potency had increased since the neighbor's initial report.[3]

The ill effects produced by the fumes are a stark contrast to the discernible danger recognized as justifying emergency intervention in other cases. See Brigham City, 547 U.S. at 406 (warrantless entry was justified where police observed ongoing violence in home); Marchione, 384 Mass. at 11-12 (1981) (warrantless entry justified by landlord's report that large quantity of volatile and explosive liquids surrounded incendiary device); Commonwealth v. Cantelli, 83 Mass. App. Ct. 156, 165-166 (2013) ("explosive levels" of natural gas filled defendant's apartment prior to entry).

---

[3] At oral argument, the Commonwealth argued that the danger from the chemical odor increased over the course of the three days, based on the nature of the complaining neighbor's statements on each of those days. This may have been a permissible inference from the neighbor's statements, but it is not a necessary one and the judge made no such finding. Even if true, however, it was apparent that exposure to the smell had not caused sufficiently negative health consequences to justify entry into the defendant's apartment on an emergency basis.

Prior to the first search, the police also lacked an objectively reasonable basis to conclude that any condition inside the defendant's apartment posed a risk of explosion. Even if a reasonable belief that methamphetamine is actively being manufactured inside an apartment justifies a warrantless entry, based on the dangers inherent to the manufacture of methamphetamine, the police lacked a reasonable basis prior to the first search to believe that the apartment contained a methamphetamine lab.  Contrast Marchione, 384 Mass. at 11-12; Cantelli, 83 Mass. App. Ct. at 165-166.  The complaining neighbor vaguely characterized the odor as a "smell like drugs." One of the officers described it as akin to "nail polish," which does not in and of itself indicate the presence of a drug lab.  Contrast United States v. Cervantes, 219 F.3d 882, 886 (9th Cir. 2000), overruled on other grounds by Brigham City, 547 U.S. at 402, 404 (tenants in immediate proximity of apartment emitting strong chemical odor and officer saw man in kitchen with large pot on floor); People v. Duncan, 42 Cal. 3d 91, 95-96 & n.1 (1986) (police lawfully entered in response to ongoing burglary and observed evidence indicating active manufacture of methamphetamine); Holder v. State, 847 N.E.2d 930, 933-934, 937-938 (Ind. 2006) (police specifically identified odor as ether, which is highly flammable; smell was strong enough to be detectable in two- or three-block area; and infant was inside

apartment from which odor was emanating); State v. Simmons, 714 N.W.2d 264, 269, 273 (Iowa 2006) (before entry, which was permissible, officer who could not identify odor contacted expert officer who ascertained smell of anhydrous ammonia, used in manufacture of methamphetamine); State v. Meeks, 262 S.W.3d 710, 714 (Tenn. 2008) (officer with high degree of expertise "could smell what [he] knew to be a meth[amphetamine] lab" and heard glass breaking and voices inside apartment).

The police also lacked a reasonable basis to conclude that the girl friend was inside the apartment and was injured or in danger of imminent harm. The police could not reach the girl friend by cellular telephone and there was no answer from the apartment when they knocked. The only indication that the girl friend may have been in the apartment was speculative, anecdotal evidence from the complaining neighbor that the defendant and his girl friend typically left together in the morning, but the defendant left alone on that particular morning. The police made no effort to contact the girl friend's employer or her family, and made only a few attempts to contact her by cellular telephone before entry.

These circumstances fall short of those in which we have determined there was an objectively reasonable basis establishing the existence of an emergency. For example, in Commonwealth v. Townsend, 453 Mass. 413, 415, 422-423, 426

(2009), the Commonwealth met its burden to justify warrantless entry into an apartment where a victim, whose last known location was inside that apartment, had not been seen for multiple days. The resident of that apartment had a history of abusing the victim. Id. at 422-423. Before entry, the police spoke to the victim's mother and the victim's sister, neither of whom had had any contact with the victim in the days leading up to the warrantless entry. Id. The victim had missed a visit with her children, scheduled through the Department of Social Services, and the victim's automobile was parked outside the defendant's apartment. Id. at 422, 424. See Entwistle, 463 Mass. at 210, 215-216 (warrantless entry reasonable where potential victim had been out of contact for two days, her dog could be heard barking inside house, and she had uncharacteristically missed multiple appointments); Peters, 453 Mass. at 823-824 (warrantless search reasonable following report of audible domestic disturbance in which gunshot was heard and individual subsequently fled scene).

b. The second entry. The proposed justification for the second warrantless entry rests on observations of drug paraphernalia made during the first entry. The Commonwealth argues that, because they observed evidence that methamphetamine had been manufactured inside the apartment, and the manufacture of methamphetamine involves the use of volatile chemicals

susceptible to explosion, the second entry was justified to ascertain the extent of the danger. Even setting aside the fact that this information was obtained solely as the result of an unlawful search, the observations of police during the first entry did not form an objectively reasonable basis to conclude that there was an imminent danger of explosion.[4]

The observations during the first search did not reasonably support the conclusion that methamphetamine was being or recently had been manufactured, or that the particular fumes to which they were exposed were highly combustible. The only additional information obtained by police during the first entry was that it appeared possible that methamphetamine had been manufactured at some point inside the apartment. The police knew that the fumes had been emanating from the defendant's apartment for at least two days before the entries. Prior to the second entry, the police lacked an objectively reasonable basis to conclude that the contents of the defendant's apartment posed an imminent danger of death or serious injury.[5] Contrast

---

[4] Because we conclude that the first search did not establish a reasonable basis to support the existence of an emergency, we need not decide whether the discovery of an emergency during an unlawful search would constitute an intervening event, limiting the reach of the exclusionary rule.

[5] The parties dispute whether the police must have an objectively reasonable basis to conclude that there is active methamphetamine production in a home to justify a warrantless entry, or whether the danger posed by fumes from a previous

Cervantes, 219 F.3d at 886 (entry justified when officer saw man in kitchen with large pot on floor); Duncan, 42 Cal. 3d at 95-96 (entry justified where police observed active heat lamp, suggesting possibility of active drug making); Cantelli, 83 Mass. App. Ct. at 165-166 (warrantless entry justified to shut off natural gas, known by officers to be highly explosive, where resident repeatedly flooded apartment with gas).

In sum, the Fourth Amendment and art. 14 form a bedrock protection of an individual's hearth and home. The inviolability of the home may be constitutionally pierced without a warrant, but only within narrowly proscribed circumstances. See DiGeronimo, 38 Mass. App. Ct. at 721, quoting Jones v. United States, 357 U.S. 493, 499 (1958) ("the few exceptions are 'jealously and carefully drawn'"). The facts of this case, as carefully determined by the motion judge, established that at the time of the first entry, there was a smell that had adversely affected a neighbor and her pet -- a smell that had persisted for days before the police took action

_____

production of methamphetamine may be sufficient. We decide only that, based on the judge's factual findings in this case, the police lacked an objectively reasonable belief that the condition of the defendant's apartment posed an imminent danger of death or serious injury or that prompt intervention was necessary to prevent a destructive accident. Whether such a danger may exist in the absence of active drug manufacturing is a question we need not resolve. As was the case before the first warrantless entry, the police still could have directed the complaining neighbor to her landlord, the fire department, or the Department of Public Health to address the fumes.

-- and the presence of paraphernalia an officer believed to be consistent with the manufacture of methamphetamine. These facts alone are insufficient to form an objectively reasonable belief in an emergency situation that justifies warrantless entry.

2. The defendant's statements. The judge permissibly suppressed the defendant's statements as the "fruit of the poisonous tree" of the unlawful searches. His inculpatory statements resulting from that arrest must be suppressed unless the State proves "that confession was 'an act of free will [sufficient] to purge the primary taint of the unlawful invasion.'" Kaupp v. Texas, 538 U.S. 626, 632-633 (2003) (per curiam), quoting Wong Sun v. United States, 371 U.S. 471, 486 (1963).

In determining whether the Commonwealth met its burden of showing that the defendant's statements were sufficiently attenuated from the Commonwealth's unlawful conduct, we consider (1) whether the defendant was informed of his rights; (2) the proximity in time of the arrest and his inculpatory statements; (3) any intervening circumstances; and (4) the degree of official misconduct. Kaupp, 538 U.S. at 633, citing Brown v. Illinois, 422 U.S. 590, 603-604 (1975). We also consider the extent to which excluding the evidence would deter future official misconduct. See Commonwealth v. Damiano, 444 Mass.

444, 452-453 (2005), citing Brown, 422 U.S. at 609 (Powell, J., concurring in part).

The balance of the factors in this case is a close call, but favors the defendant.  The police read the defendant his Miranda rights and there was no misconduct during the interview itself.  However, for the reasons stated above, the warrantless entries were unlawful.  The defendant made his statements roughly twenty-one hours after his arrest, during which time he was continuously in police custody.  No intervening circumstances further attenuated the defendant's statements from his arrest, which was a direct result of the unlawful searches. We conclude that the negative effects of the unlawful searches were not "'so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost.'"  Damiano, 444 Mass. at 453, quoting Brown, 422 U.S. at 609 (Powell, J., concurring).

Order allowing motions to
suppress affirmed.