Following a jury trial in the District Court, the defendant, Yusuf Ibn Qadir, was convicted of possession of a firearm without a license, possession of ammunition without a license, and unlawful storage of a firearm. On appeal the defendant challenges the denials of both his motion to suppress and his motion for required findings of not guilty. We affirm.
1. Motion to suppress. a. Facts. We summarize the facts found by the motion judge after the evidentiary hearing. "[W]e are bound by a judge's subsidiary findings of fact absent clear error." Commonwealth v. Clark, 65 Mass. App. Ct. 39, 43 (2005). The judge specifically credited the testimony of the four Springfield police officers who testified at the hearing.
On July 1, 2015, Springfield police officers were dispatched to a residence based on a report of a fight there, involving seven or eight people. As he approached, Officer Chad Joseph observed people running through the front door of the residence and also saw neighbors pointing towards the residence. Joseph was familiar with the location based on a number of prior incidents involving drug violations and domestic abuse.
In front of the residence, Joseph observed a woman who was bleeding from the mouth. Joseph spoke to her and noticed that she was shaking, frantic, and her speech was difficult to understand. She stated that "they beat me up" and pointed to the residence. At this time, backup had arrived, and at least four officers approached the residence. As they stood outside the residence, the officers could hear people running upstairs. The officers knocked on the front door and when it was opened, the officers stated their intention to enter the home and conduct a protective sweep; they did not seek nor were they given consent to enter.
Several officers then entered the residence and proceeded to conduct a protective sweep of the entire house in search of other injured parties or assailants. Joseph went to the second floor with Officers Williams and Dyer. The officers approached a door at the top of the stairs that was closed and locked. They heard footsteps behind the door and what sounded like an item being dragged across the floor. After knocking and announcing themselves several times, the officers ordered that the door be opened upon threat of kicking it down.
Following these repeated commands, the defendant opened the door. Joseph secured the defendant and removed him from the residence pending completion of the protective sweep. Williams and Dyer then entered the room, which appeared to be a bedroom; no people were found in the room. Williams then opened a closet door in the room and in the closet the officers immediately saw a large plastic cooler with the lid open. Inside the cooler were unsecured handguns, a stun gun, and more than 1,000 rounds of ammunition. Subsequent investigation revealed that the defendant and his brother, Munir Qadir, shared the bedroom, and neither was authorized to possess ammunition, firearms, or stun guns.
The judge denied the defendant's motion to suppress, finding that the emergency aid exception to the warrant requirement applied.
b. Discussion. The defendant maintains that the judge erred in denying his motion to suppress evidence from the warrantless search because the officers were not confronting a situation that came within the emergency aid exception. For the following reasons, we affirm.
The emergency aid exception to the warrant requirement "applies when the purpose of the police entry is not to gather evidence of criminal activity but rather, because of an emergency, to respond to an immediate need for assistance for the protection of life or property." Commonwealth v. Snell, 428 Mass. 766, 774, cert. denied, 527 U.S. 1010 (1999), quoting from Commonwealth v. Bates, 28 Mass. App. Ct. 217, 219 (1990). This exception requires (1) the presence of "objectively reasonable grounds to believe that an emergency exists" and (2) that "the conduct of the police following the entry [is] reasonable under the circumstances, which here means that the protective sweep must be limited in scope to its purpose-a search for victims or suspects." Commonwealth v. Peters, 453 Mass. 818, 823 (2009).
"[T]he burden of proof is on the Commonwealth to show that the warrantless entry falls within the exception [to the warrant requirement] and that there were reasonable grounds for the ... police to believe (an objective standard) that an emergency existed." Bates, supra at 219-220. The officers are not required to be certain that a person's life is in danger or to know the precise nature of a person's injuries, nor are they required to have probable cause to believe that a crime has been committed. See Commonwealth v. Entwistle, 463 Mass. 205, 214 (2012). "It suffices that there are objectively reasonable grounds to believe that emergency aid might be needed." Ibid.
Here, the judge found that there were objectively reasonable grounds to believe that an emergency existed. We agree. The officers were familiar with the residence because of prior domestic abuse and drug issues. Upon arriving, the officers observed an injured female who was unable to provide detailed information apart from indicating that her assailant(s) were inside the residence. The officers also saw several people flee into the residence as the police arrived, and neighbors were pointing to the residence. Under these circumstances, it was reasonable for the officers to believe that an emergency existed inside the residence and to enter for the purpose of locating additional injured parties or to quell further violence inside. See ibid., quoting from Michigan v. Fisher, 558 U.S. 45, 49 (2009) (" 'Officers do not need ironclad proof of "a likely serious, life-threatening" injury to invoke the emergency aid exception.' ... It suffices that there are objectively reasonable grounds to believe that emergency aid might be needed").
Having concluded that the entry was justified, we turn to the second requirement of the emergency aid exception: that the conduct of the police following the entry must be reasonable in the circumstances, which here means a search for possible victims and assailants. See Peters, supra. Contrary to the defendant's contention, there was no evidence to suggest that the police used the perceived emergency as a pretext to conduct a search of the premises. Once inside the residence, the scope of the sweep was reasonable as it was limited to areas where a person could be located and was brief in duration. See id. at 824 ("The protective sweep was limited in scope to a cursory inspection for a [perpetrator] or victim, and reflected the officers' lawful purpose in entering the house and conducting the sweep"). Upon opening the closet door in furtherance of this lawful purpose the officers observed handguns, a stun gun, and multiple rounds of ammunition in plain view. The defendant's motion to suppress was properly denied.
2. Motion for required findings of not guilty.[2] The defendant next argues that the judge erred in denying his motion for required findings of not guilty because there was insufficient evidence that the defendant had constructive possession of the firearms and ammunition found in the closet, and insufficient evidence of unlawful storage of a firearm. We disagree.
In determining the sufficiency of the evidence at trial, we apply the standard set forth in Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), that is, when the evidence is viewed in the light most favorable to the Commonwealth, "whether any rational fact finder could have found all essential elements of the crime beyond a reasonable doubt." Commonwealth v. Acosta, 81 Mass. App. Ct. 836, 839 (2012).
a. Constructive possession of firearms and ammunition. There was sufficient evidence to support the convictions of the crimes of possession of firearms and ammunition without a license beyond a reasonable doubt. Because the incriminating evidence was found in the bedroom closet, and not on the defendant himself, the Commonwealth had to prove that the defendant had constructive possession of the items. See Commonwealth v. Boria, 440 Mass. 416, 418 (2003).
To prove constructive possession, the Commonwealth must show "knowledge coupled with the ability and intention to exercise dominion and control." Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989), quoting from Commonwealth v. Rosa, 17 Mass. App. Ct. 495, 498 (1984). While the defendant's presence in the residence, by itself, is insufficient to prove "the requisite knowledge, power, or intention to exercise control over the [firearms and ammunition], presence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.' " See id. at 410, quoting from Commonwealth v. Albano, 373 Mass. 132, 134 (1977). See Commonwealth v. Gonzalez, 452 Mass. 142, 146-150 (2008).
Here, not only was the defendant present in the residence at the time the officers conducted the protective sweep, but a reasonable fact finder could conclude that the defendant ran to the bedroom to hide the firearms and ammunition in the closet before the officers approached. See Commonwealth v. Pimentel, 73 Mass. App. Ct. 777, 785 (2009) ("scurrying sounds" could support inference that someone hid contraband). The defendant refused to open the locked door, despite numerous requests from the officers. See Commonwealth v. McIntosh, 78 Mass. App. Ct. 37, 42 (2010) (sufficient evidence of intent to control firearm where presence was supplemented by evidence that defendant ran to bedroom and proceeded directly to location under mattress where firearm was found).
The defendant contends that it was his brother's bedroom in which the firearms were found and emphasizes that there was no clothing or other identifying evidence found in the bedroom that linked that room to him. The defendant cites Commonwealth v. Frongillo (No.1), 66 Mass. App. Ct. 677, 681 (2006), as support for his contention. The facts in Frongillo are distinguishable. Here, unlike in Frongillo, the defendant was present at the residence-and in the room-where the firearms were located. There was evidence from which the jury could infer that he fled to that room, locked the door, and dragged a cooler containing the firearms to the closet. The defendant also ignores that constructive possession may be joint. See, e.g., Commonwealth v. Acosta, 416 Mass. 279, 284 (1993).
b. Unlawful storage of firearms. The defendant argues that there was insufficient evidence that he was the owner or authorized user of the firearms or ammunition, which proof was required for a conviction. However, the statute[3] does not impose such a requirement, and the judge instructed the jury in accordance with the statute. See Instruction 7.630 of the Criminal Model Jury Instructions for Use in the District Court (2014) (Commonwealth must prove that [1] defendant stored or kept firearm, [2] defendant was not carrying firearm or did not have it under his immediate control, and [3] firearm was not secured). "Whether a particular gun is under a defendant's control 'will depend on the facts and circumstances of any given case.' " Commonwealth v. Cantelli, 83 Mass. App. Ct. 156, 172 (2013), quoting from Commonwealth v. Patterson, 79 Mass. App. Ct. 316, 320 (2011). There was sufficient evidence for the jury to conclude that the defendant was guilty of the crimes charged.
Judgments affirmed.

Four of the officers who testified at the evidentiary hearing on the motion to suppress also testified at trial. At trial, two additional police officers testified, and one fingerprint expert from the police department also testified. (There was no fingerprint evidence presented at trial.) A woman who had been present was also a witness. For our analysis, it is not necessary to summarize the evidence presented at trial because it does not differ significantly from the evidence presented at the motion hearing.

General Laws c. 140, § 131L(a ), inserted by St. 1998, c. 180, § 47, states: "It shall be unlawful to store or keep any firearm, rifle or shotgun including, but not limited to, large capacity weapons, or machine gun in any place unless such weapon is secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device, properly engaged so as to render such weapon inoperable by any person other than the owner or other lawfully authorized user. For purposes of this section, such weapon shall not be deemed stored or kept if carried by or under the control of the owner or other lawfully authorized user."